UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------X
UNITED STATES OF AMERICA,

       - against -              **MEMORANDUM & ORDER**

HAROLD TISCHLER,               S2 11 CR 424 (NRB)

                Defendant.
--------------------------------X
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

    Defendant Harold Tischler ("Tischler") was convicted on February 5, 2013 of conspiracy to commit immigration fraud and making false statements to immigration authorities.  On June 17, 2013, he was sentenced to a term of imprisonment of one year and one day, to run concurrently on both counts, and a term of supervised release of three years.  He was further ordered to surrender to the United States Marshals for this district on August 28, 2013.

    Presently before the Court is Tischler's motion to stay his surrender date and for bail pending appeal.  In relevant part, Title 18, United States Code, Section 3143 provides that a defendant sentenced to a term of imprisonment shall be detained unless the Court finds by clear and convincing evidence that the defendant does not pose a flight risk and that his appeal is "not for the purpose of delay and raises a substantial question of law or fact likely to result in (i) reversal, (ii) an order

for a new trial . . . or (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process."   18 U.S.C. § 3143(b).   A substantial question is "one of more substance than would be necessary to a finding that it was not frivolous.   It is a 'close' question or one that very well could be decided the other way."   United States v. Randell, 761 F.2d 122, 125 (2d Cir. 1985).   If a substantial question is found, the Court must look to whether the issue is "so integral to the merits of the conviction on which defendant is to be imprisoned that a contrary appellate holding is likely to require reversal of the conviction or a new trial."   Id.   The defendant has the burden of persuasion with respect to Section 3143(b).   Id.

For the reasons that follow, we conclude that none of the issues Tischler raises in his motion presents the kind of close, substantial questions that warrant bail pending appeal. Accordingly, the motion is denied.

**BACKGROUND**

**A. Factual Background**

The charges in the Indictment address the commission of one of the largest immigration frauds in U.S. history, spanning thirteen years and resulting in the submission to immigration authorities of over 25,000 fraudulent applications.   Operating out of the Earl David law firm (the "David Firm"), the

defendants[1] successfully exploited immigration laws permitting non-U.S. citizens to obtain labor certifications from the Department of Labor ("DOL") by falsely representing that a U.S. employer wished to employ, or "sponsor," them, which in turn allowed the non-citizens to petition U.S. Customs and Immigration Services ("USCIS") for permanent legal status in the U.S.

Certain of the defendants charged in the scheme worked directly for the David Firm, either dealing directly with clients (such as by recruiting them, helping them to fill out paperwork, or collecting substantial fees from them), assisting in the preparation of phony tax returns and other supporting documentation, or by acting as the attorney preparer of the fraudulent applications. Other defendants helped the fraud succeed from outside the David Firm's offices by agreeing to certify as an employer the sponsorship of the fraudulent applicants when they had no intention of hiring them or, in many instances, when no such jobs even existed. The Government alleged that Tischler was one such "sponsor defendant" who agreed to falsely attest to his sponsorship of non-citizens in exchange for payments.

---

[1] In total, the Government has charged 23 defendants in this district with participation in the David Firm's immigration fraud conspiracy.

**B. Procedural History**

On May 17, 2011, a grand jury in this District returned an indictment charging Gulay Cibik ("Cibik") and Ali Gomaa, who is a fugitive, with conspiracy to commit immigration fraud, in violation of 18 U.S.C. § 371, and making false statements to immigration authorities, in violation of 18 U.S.C. §§ 1546(a) and (2).

On October 11, 2011, Superseding Indictment S1 11 Cr. 424 (NRB) was filed against Cibik, Gomaa, and ten co-defendants, including Tischler and Earl David ("David"), the architect of the fraud, in three counts: conspiracy to commit immigration fraud, in violation of 18 U.S.C. § 371, making false statements to immigration authorities, in violation of 18 U.S.C. §§ 1546(a) and (2), and conspiracy to commit mail and wire fraud, in violation of 18 U.S.C. § 1349.  David was also charged with conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h).  Seven of those defendants subsequently pled guilty to the charged conspiracy.

On December 12, 2012, Superseding Indictment S2 11 Cr. 424 (NRB) (the "Indictment") was filed against Tischler and the other four defendants who had not pled guilty by that time: Cibik, Refael Brodjik ("Brodjik"), Nathan Schwartz ("Schwartz") and Abraham Flam ("Flam").  It contained eight counts, three of which named Tischler:  Count One charged Tischler and his co-

defendants with conspiring to commit immigration fraud and to make false statements, in violation of 18 U.S.C. § 371; Count Seven charged Tischler with the substantive crime of making false statements to immigration authorities, in violation of 18 U.S.C. §§ 1546(a) and (2); finally, Count Eight charged Tischler and his co-defendants with conspiring to commit mail and wire fraud, in violation of 18 U.S.C. § 1349. The Government did not pursue the mail and wire fraud charge at trial.

Trial against Tischler and his co-defendants[2] commenced on January 15, 2013 and concluded on February 5, 2013, when the jury returned a verdict of guilty on all counts for each defendant. (Trial Transcript ("Tr.") at 2335-2440.) Tischler was released on bail pending sentencing. (Tr. at 2474.)

On June 17, 2013, we sentenced Tischler to a term of imprisonment of one year and one day, to run concurrently on Counts One and Seven, followed by concurrent terms of three years' supervised release. We also imposed a mandatory $200 special assessment fee and ordered forfeiture in the amount of $35,900, representing the proceeds Tischler obtained as a result of the offenses charged in Counts One and Seven.

---

[2] Flam ultimately pled guilty to Count Five of S2 on January 9, 2013. Thus, only Cibik, Brodjik, Schwartz and Tischler proceeded to trial.

Following the imposition of sentence, Tischler's trial counsel made a pro forma application for bail pending appeal, which we denied:

> MR. GREENFIELD: And I have spoken to or have been contacted by counsel who may be retained to represent Mr. Tischler on appeal.
> THE COURT: You are appointed counsel?
> MR. GREENFIELD: No.
> THE COURT: You are retained counsel?
> MR. GREENFIELD: Yes.  I don't know what his finances are at the moment.  But there's been an indication to me that he may have retained counsel for an appeal, and I would ask your Honor, would you entertain an application for him to remain at liberty during the pendency of the appeal?
> THE COURT: No.
> MR. GREENFIELD: OK.

(Sentencing Transcript ("Sent. Tr.") at 113-14.)  Trial counsel also made an application to delay Tischler's surrender date until after the bar mitzvah of his son, which we granted:

> THE COURT: I know that there are some upcoming family events, so remind me what they are.  If I can, I will try to accommodate them, if that is the request.  I don't know if it is.
> MR. GREENFIELD: Mr. Tischler's son is being bar mitzvahed July 27 and August 21. . . . So a surrender date after August 21 would be preferable.
> THE COURT: Why don't we say a week later, on August 28.

(Sent. Tr. at 116-17).  Accordingly, we ordered Tischler to surrender to the United States Marshals in this district before 10:00 a.m. on August 28, 2013.

On June 25, 2013, Tischler filed a notice of appeal of his conviction and sentence.  (Dkt. no. 281.)  His newly retained counsel filed a motion in the Court of Appeals on July 19, 2013 to stay his surrender and for bail pending the resolution of his appeal.  Because he had not made a fully developed application for bail in this Court, the Second Circuit declined to determine the merits and denied the motion without prejudice.  Order, <u>Tischler v. United States</u>, Case No. 13-2479 (2d Cir. Aug. 1, 2013) (dkt. no. 93).  Counsel for Tischler subsequently refiled his motion in this Court on August 7, 2013 (dkt. no. 291) ("Rabin Aff.")[3].  The Government filed its opposition on August 12, 2013 (dkt. no. 295) ("Gov't Opp.").

## DISCUSSION

Tischler asserts three issues for appeal.  Primarily, he argues that the evidence presented at trial was insufficient to sustain his conviction on Counts One and Seven. (<u>See</u> Rabin Aff. at 20-25.)  He further submits that his trial counsel was ineffective, depriving him of his right to a fair trial (<u>see id.</u> at 24-26), and that it was error for this Court to admit certain DOL case notes into evidence under the business records hearsay exception (<u>see</u> <u>id.</u> at 26.)  In addition, Tischler contends that

---

[3] Because counsel for Tischler failed to paginate his affirmation in support of the instant motion, all references preceded by "Rabin Aff." rely on the page numbers indicated at docket no. 291.

he does not pose a flight risk or a danger to society, which counsels in favor of bail pending appeal. (See id. at 26-27.)

**A. The Evidence at Trial Was Sufficient**

A defendant seeking to challenge the sufficiency of the evidence bears a "heavy burden." United States v. Heras, 609 F.3d 101, 105 (2d Cir. 2010). The standard of review in such circumstances is "exceedingly deferential," United States v. Hassan, 578 F.3d 108, 126 (2d Cir. 2008), requiring the reviewing court to sustain the jury's guilty verdict if, "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Heras, 609 F.3d at 105 (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original)). Under this standard, "a court may not usurp the role of the jury by substituting its own determination of the weight of the evidence and the reasonable inferences to be drawn for that of the jury." United States v. MacPherson, 424 F.3d 183, 187 (2d Cir. 2005). Moreover, a court must defer to the jury's assessment of witness credibility and the jury's resolution of conflicting testimony," United States v. Bala, 236 F.3d 87, 93-94 (2d Cir. 2000), even when those witnesses "testified pursuant to cooperation agreements with the Government" and even if "their testimony was

8

pock-marked with inconsistencies," <u>United States v. Glenn</u>, 312 F.3d 58, 64 (2d Cir. 2002).

We begin our analysis by summarizing the evidence against Tischler received or elicited at trial below:

- Over 250 fraudulent documents, filed with DOL and USCIS between 2004 and 2009, in which Tischler falsely attested that he intended to hire particular non-citizens to work at one of nine different "sponsor" companies (Tr. at 187-203; 1213-1215; 1330-1345; 1423-1440; 1742-1934);

- Hundreds of pieces of mail which had been sent directly from DOL and USCIS to Tischler's home or office, including approved DOL certifications, necessary for applying to USCIS for immigration benefits, which Tischler in turn delivered personally to co-conspirators at the David Firm;

- Case notes recorded by DOL employees containing phone numbers registered to Tischler and indicating that Tischler personally confirmed to them, by telephone or email, his intent to hire particular non-citizens on whose behalf he had filed fraudulent sponsor applications (Tr. at 1330-1345; GX 107-3-A, 107-4-A, 107-6-A, 107-8-A, 107-16-A, 107-20-A, 107-21-A, 110-15-A, 110-31-A, 112-6-A, 112-9-A, 113-6-A, 113-10-A, 223, 224);

- Mail associated with a Delaware company incorporated by the David Firm using Tischler's home address, phone number, and email address, sent from DOL and USCIS to an address controlled by the David Firm (Tr. at 187-203, 1213-1215, 1330-45, 1423-40, 1742-1934);

- Bank statements and tax records for Tischler's companies, listing as Tischler's address the same address used on fraudulent applications for alien labor certification, which indicated that the companies were not financially able to pay a prevailing wage to the non-citizens Tischler purported to sponsor (GX 205, 206, 209-215, 225-226);

- A lease signed by Tischler for office space for the David Firm at 17 Battery Place, New York, NY, falsely claiming the space would be used by Fix Anything Construction and Plumbing, one of several companies he used to falsely sponsor non-citizens (Tr. at 1213-15; GX 200);

- Testimony of Sam Salamon, a cooperating witness who previously worked for the David Firm, detailing his personal knowledge of Tischler's involvement in the fraud as follows:

  o Salamon personally recruited Tischler to falsely claim that he would sponsor David Firm clients for employment in exchange for compensation (Tr. at 1332);

o Several of Tischler's companies were used, with his permission, as phony sponsors on applications prepared by the David Firm (Tr. at 1338; GX 107-115);

o Tischler called DOL to verify phony sponsorships and emailed Salamon to report back on such confirmations (Tr. at 1330-1345; GX 3612);

o Salamon personally paid Tischler $300-$500 for each approved DOL alien labor certification that he delivered to the David Firm (Tr. at 1194, 1201-1201, 1332-1336; GX 202);

o Salamon personally paid Tischler for certain rejected DOL sponsor applications after Tischler complained to him that he was not making enough money from the fraud (Tr. at 1342);

o Salamon personally paid Tischler $5,000 to sign the lease for office space at 17 Battery Place, New York, NY because the David Firm had been evicted from its prior office and Salamon lacked sufficient credit to sign a lease himself (Tr. at 1212-15);

o Salamon received a text message from Tischler in which he complained about having to travel to the David Firm's office in Manhattan to be paid for his role in the fraud (Tr. at 1338-1342);

- Salamon personally paid Tischler another $5,000 after the fraud was uncovered to help pay for his counsel fees (Tr. at 1212-1214, 1266-1272; GX 200); and

- Salamon received a Facebook message from Tischler in August 2012 that stated, "Moiser, you put me in jail. WOW." (Tr. at 1343-45).

• Testimony of David Grynsztain, a cooperating witness who previously worked for the David Firm, detailing his personal knowledge of Tischler's involvement in the fraud as follows:

- Grynsztain used the names of companies owned by Tischler in preparing phony applications for labor certification (Tr. at 917);

- Grynsztain observed Tischler visiting the David Firm's offices on multiple occasions; and

- Grynsztain witnessed an argument between Tischler and Salamon over whether Tischler was being paid sufficiently for each phony sponsor application (Tr. at 731-734).

Viewing the above evidence in the light most favorable to the prosecution, we conclude that a rational trier of fact could easily have found the elements of Tischler's crimes beyond a reasonable doubt.  Indeed, the evidence showed that he played a

critical role in the immigration fraud scheme.  The Government produced documentary evidence showing that Tischler signed, and permitted others to sign his name, on fraudulent applications for alien labor certification in which he falsely attested that he intended to hire particular non-citizens, and that he would pay them a prevailing wage, knowing that he did not intend to do either.  The Government further showed that Tischler received a vast amount of correspondence from the DOL in connection with those fraudulent applications, some of which he subsequently delivered to the David Firm, and personally confirmed his intent to hire David Firm applicants to DOL staff members on multiple occasions.

Government witnesses corroborated the above documentary evidence by testifying as to their firsthand knowledge of Tischler's involvement in the fraudulent scheme.  Salamon testified that Tischler had falsely confirmed his sponsorship of David Firm clients in exchange for payments of $300 - $500 per approved certification.  Indeed, Salamon and Grynsztain testified that Tischler demanded higher compensation for his participation in the fraud by seeking payment for unapproved certifications as well.

The evidence also showed that Tischler assisted the fraud in other ways besides sponsoring fraudulent applications for labor certification.  For example, Salamon paid Tischler $5,000

to sign a lease, purportedly on behalf of his own company, which was in fact intended for use as office space by the David Firm. Salamon further testified that he gave Tischler an additional $5,000 after the fraud was discovered to help pay his counsel fees.  The record contains no explanation for why Tischler would have accepted these payments, if not to compensate actions he took to further the scheme's unlawful objectives.  Thus, having considered the trial record as a whole, we conclude that the evidence admitted against Tischler was more than sufficient to sustain his convictions for conspiracy to commit immigration fraud and making false statements to immigration authorities.

Moreover, despite Tischler's assertions to the contrary, the Government was not required to prove at trial that he was aware of the entirety of the David Firm's fraudulent activity. The law of conspiracy requires only that a co-conspirator knowingly engage in the scheme with the intent to help it to achieve its object and commit an overt act in furtherance of the scheme.  See United States v. Mahaffy, 693 F.3d 113, 123 (2d Cir. 2012).  The knowledge element does not require each co-conspirator to comprehend the entirety of the scheme, nor be aware of all of its members.  See United States v. Wiley, 846 F.2d 150, 153 (2d Cir. 1988); see also United States v. Reifler, 446 F.3d 65, 96 (2d Cir. 2006).  Thus, Tischler's argument that the evidence was insufficient to show his awareness of the full

scope of the immigration fraud, (see Rabin Aff. at 23-24), does not present a substantial or "close" question likely to result in a new trial on appeal, particularly given the evidence of his extensive involvement in the conspiracy.

**B. Trial Counsel Was Not Ineffective**

Tischler next argues that his counsel's performance at trial was so defective as to deprive him of a fair trial. (See Rabin Aff. at 24-25.) A claim for ineffective assistance of counsel is analyzed under the two-part standard set forth in Strickland v. Washington, 466 U.S. 668 (1984). Under this framework, a defendant must show (1) that his counsel's representation fell below "an objective standard of reasonableness," and (2) that the allegedly deficient performance resulted in prejudice. Strickland, 466 U.S. at 687. A court may reject a claim of ineffective assistance of counsel for failure to satisfy either prong. Id. at 697.

To satisfy the performance prong, the defendant must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Raysor v. United States, 647 F.3d 491, 495 (2d Cir. 2011) (quoting Strickland, 466 U.S. at 689). Counsel's performance will be deemed ineffective only if the defendant can "identify acts or omissions [that] were outside the wide range of professionally competent assistance," Strickland, 466 U.S. at

690, and the court must make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689.

To satisfy the prejudice prong, the defendant must prove "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Raysor, 647 F.3d at 495 (quoting Strickland, 466 U.S. at 694). Thus, "[e]ven serious errors by counsel do not warrant granting . . . relief where the conviction is supported by overwhelming evidence of guilt." Lindstadt v. Keane, 239 F.3d 191, 204 (2d Cir. 2001).

Applying the above standard, we find that none of the examples Tischler offers to support his claim sufficiently overcomes the presumption that trial counsel's conduct fell within the range of reasonable and competent representation. First, he alleges that his counsel put forth an insufficient defense which failed to address key evidence admitted at trial or argue the absence of evidence establishing that Tischler did not intend to hire the non-citizens whom he sponsored. (See Rabin Aff. at 25.) This claim is meritless. The record indicates that trial counsel represented his client ably, often finding new avenues for cross-examination, as Tischler concedes

16

by noting that counsel persistently questioned the admissibility
of Salamon's definition of the term "moiser." (Rabin Aff. at
26.) Indeed, Tischler's counsel was the only lawyer who called
any witnesses on his client's behalf at trial, evidencing a
level of representation that simply did not fall below that
which is constitutionally mandated by Strickland. See Carbajal
v. United States, No. 99 Civ. 1916 (MGC), 2004 WL 2283658, at *7
(S.D.N.Y. Oct. 8, 2004).

Second, Tischler alleges that his trial counsel failed to
call any defense witnesses to support his position that Salamon
had misinterpreted the term "moiser" when he testified that he
understood the term to be a Yiddish word for rat or informant in
the context of the Facebook message Tischler sent to Salamon
shortly before the commencement of trial.[4] (Tr. at 1344-1345.)
It is well established that "the decision not to call a
particular witness is typically a question of trial strategy
that appellate courts are ill-suited to second-guess." United
States v. Luciano, 158 F.3d 655, 660 (2d Cir. 1998) (citing
Trapnell v. United States, 725 F.2d 149, 155 (2d Cir. 1983)).
Thus, this argument, too, fails to overcome the presumption that
trial counsel's representation fell within the range of

---

[4] Tischler does not begin to address to obvious argument that regardless of the
meaning of the term "moiser," that message is inculpatory.

reasonable professional assistance.   See Raysor, 647 F.3d at 495.

Finally, Tischler submits that his trial counsel should have called him to testify on his own behalf, as he was the only witness who could "really counter the evidence presented by the government" against him.   (Rabin Aff. at 26.)   As an initial matter, we note that Tischler argues neither that trial counsel refused to permit him to testify at trial, nor that trial counsel failed to advise him of his right to testify on his own behalf.   To date, he has submitted no affidavit indicating that he sought to testify at trial.   Thus, Tischler asserts none of the traditional arguments associated with a claim of ineffective assistance due to counsel's prevention of his exercise of the fundamental constitutional right to testify.   See Brown v. Artuz, 124 F.3d 73, 79 (2d Cir. 1997).   Rather, we interpret Tischler's argument to question trial counsel's strategy with respect to calling witnesses generally, for which Tischler provides no basis from which to conclude that the decision was anything other than sound strategic advice.   See Luciano, 158 F.3d at 660.   Moreover, given the overwhelming evidence presented against Tischler at trial, we conclude that he has not shown a reasonable probability that his testimony would have resulted in a different outcome at trial.   See, e.g., United States v. Quinones, 412 Fed. App'x 379, 381 (2d Cir. 2011)

(citing Rega v. United States, 263 F.3d 18, 21-26 (2d Cir. 2001)).

In sum, the above complaints simply do not address conduct and choices that fall outside the "wide range of professionally competent assistance" mandated by Strickland, 466 U.S. at 690. Significantly, Tischler's motion does not meaningfully address the prejudice prong of an ineffective assistance claim. He makes no showing whatsoever that, even if trial counsel had made the decisions Tischler asserts he should have, the result of the proceedings would have been different.  See id. at 693-94. Notably absent from Tischler's papers is any specification of the substance of evidence that trial counsel is faulted to having failed to introduce.  Thus, we find that Tischler's claim of ineffective assistance of counsel fails to raise a colorable claim, let alone a substantial issue for appeal.

## C. The DOL Case Notes Were Properly Admitted

Finally, Tischler argues that the DOL case notes, which contained entries by DOL employees indicating that he had personally confirmed to them his intention to hire the non-citizens whom he sponsored, were improperly admitted under the business records hearsay exception because their creation was in anticipation of possible litigation, rendering the entries testimonial in nature. (See Rabin Aff. at 26.)

19

At trial, DOL employee Elissa McGovern testified that following the receipt of an application for alien labor certification, a DOL employee routinely contacts the employer contact listed on the application to verify that he or she is in fact sponsoring the foreign worker for permanent residence. (Tr. at 129-131.)   Ms. McGovern further testified that it is DOL's regular practice to initially transmit its verification request to the employer contact by email, because the form is submitted online, but that if the employer has not yet responded after seven days, a DOL employee would typically contact the employer by phone and record a summary of the date, time, and content of the phone call in the case notes for the relevant application.   (Tr. at 130-131.)   Ms. McGovern also testified that DOL employees record such entries in the case notes as a matter of regular course, and that DOL relies on such entries within the regular course of its business.   (Tr. at 147-148.)

Ms. McGovern's testimony clearly established that the DOL case notes were made and kept in the ordinary course of DOL's business at or near the time of the events recorded, by a person with personal knowledge of the events recorded therein, and were relied upon by the DOL in the ordinary course of its business. Nowhere in her testimony did Ms. McGovern indicate that the case notes were created only in response to an internal audit, or after some irregularity was discovered, as Tischler now

suggests.   Indeed, an objection that the call notes were testimonial in nature was both considered and rejected at trial:

> MR. BRILL [representing co-defendant Schwartz]: But the damaging issue for us specifically is, "Spoke to Mr. Schwartz, Mr. Schwartz confirmed this," this issue, where you don't know who made the entry.   All it says is that it was entered by a specific person, not that that was the person who had the conversation. We don't know what phone number was called.   And whereas the custodian of records may say that this is a regular – a record kept in the regular course of business by the Department of Labor, there's still a reliability issue because the information contained – I understand –
> THE COURT: The person writing [] is totally unaware at the time that there's going to be a case in this courtroom.
> MR. BRILL: Right.
> THE COURT: There's no reason for them to deliberately misstate what they entered; right?
> MR. BRILL: No.

(Tr. at 67-68.)   For the reasons stated at trial, and based upon Ms. McGovern's testimony, the call notes were created in the ordinary course of DOL's regular verification of sponsorship for alien labor certification applications, and thus were properly admitted as business records.   See Fed. R. Evid. 803(6); see also United States v. Stewart, 433 F.3d 273, 316-17 (2d Cir. 2006) (affirming admissibility of phone log kept in regular course of business as business record under Rule 803(6)); United States v. Williams, 205 F.3d 23, 34 (2d Cir. 2000) (business records deemed admissible where a "custodian or other qualified witness" testifies that the document was "kept in the course of a regularly conducted business activity and also that it was the

regular  practice  of  that  business  activity  to  make  the [record]").    We therefore conclude that this argument fails to raise a "close question or one that very well could be decided the other way" on appeal.  Randell, 761 F.2d at 125.

**D. Risk of Flight**

Since Tischler fails to establish that his appeal raises a substantial question of law or fact which, if determined favorably, is likely to result in reversal or an order for a new trial, we need not decide whether he poses a risk of flight in order to deny his motion for bail pending appeal.  See Randell, 761 F.2d at 125.  That said, we acknowledge that the Government has made certain arguments about Tischler's conduct post-sentencing that could raise issues with respect to risk of flight.  (Gov't Opp. at 9-10.)

## CONCLUSION

For the foregoing reasons, we find that each of the issues Tischler proposes to raise on appeal – a challenge to the sufficiency of the overwhelming evidence admitted against him at trial, an unsupported claim of ineffective assistance of counsel, and a meritless challenge to the admission of the DOL case notes – fails to raise a substantial question of law or fact likely to result in a reversal or an order for a new trial. Indeed, we conclude that the purpose of his motion is precisely that which the statute forbids, namely, to delay the commencement of his term of imprisonment. Randell, 761 F.2d at 125. Accordingly, the motion for bail pending appeal (dkt. no. 291) is denied and Tischler is directed to surrender to the United States Marshals for this district before 10:00 a.m. on August 28, 2013.

**SO ORDERED.**

DATED:      New York, New York
            August 26, 2013
              **23**

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

Copies of the foregoing Order have been mailed on this date to the following:

**Counsel for Defendant Harold Tischler**
Jeffrey A. Rabin, Esq.
16 Court Street, Suite 3301
Brooklyn, NY 11241

**Counsel for the Government**
Janis M. Echenberg, Esq.
James J. Pastore, Esq.
Assistant United States Attorneys
One Saint Andrew's Plaza
New York, NY 10007